IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-00675-PAB

MICHAEL A. BOETGER,

      Applicant,

v.

ACTING WARDEN BURNELL, Buena Vista Correctional Facility, and
JOHN SUTHERS, the Attorney General of the State of Colorado,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

      Applicant Michael A. Boetger has filed *pro se* an Application for a Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 challenging the validity of his criminal conviction

in the District Court of Teller County, Colorado.  Respondents have filed an Answer

[Docket No. 35], and Applicant has filed a Reply [Docket No. 38].  Having considered

the same, along with the state court record, the Court will deny the Application.

## I.  BACKGROUND

      Applicant's September 2007 trial resulted in a hung jury in Teller County District

Court Case No. 06CR185.  Docket No. 10-2 at 8.  In December 2007, Applicant

pleaded guilty to the charge of sexual assault on a child by one in a position of trust.  *Id.*

at 8-9.  Before sentencing, Applicant filed, *pro se*, two letters requesting that he be

allowed to withdraw his guilty plea pursuant to Colo. Crim. P. Rule ("Crim. P.") 32(d).

*Id.* at 11-12.  The state district court appointed counsel who filed an amended Crim. P.

32(d) motion.  *Id.* at 12-13.  Following an evidentiary hearing, the state court denied the

motion.  State Court R., 6/16/08 Hrg. Tr.  The state court then sentenced Applicant to an indeterminate prison term of eight years to life in the Colorado Department of Corrections.  Docket No. 35-3, 8/11/08 Hrg. Tr.

The Colorado Court of Appeals affirmed the state district court's order denying Applicant's Crim. P. 32(d) motion.  *See People v. Boetger*, No. 08CA2011 (Colo. App. Aug. 26, 2010) (unpublished) (*Boetger I*).

In February 2012, Applicant filed, *pro se*, a Crim. P. 35(c) motion, seeking to set aside his guilty plea, which the district court denied.  The Colorado Court of Appeals affirmed the district court's order in *People v. Boetger*, 12CA688 (Colo. App. Dec. 26, 2013) (unpublished) (*Boetger II*).  Docket No. 10-8.  The Colorado Supreme Court denied Applicant's petition for certiorari review on November 3, 2014.  Docket No. 22-1.

On March 4, 2014, Mr. Boetger filed his federal application under 28 U.S.C. § 2254 asserting 12 claims for relief.  Docket No. 1.  In the Pre-Answer Response, Respondents conceded the timeliness of the Application under 28 U.S.C. § 2244(d)(1) of the AEDPA.  Docket No. 10, at 6-8.  Respondents argued, however, that claims 2, 5, 9, 10, and 11 were not cognizable on federal habeas review.  *Id.* at 14, 29-30.  Respondents further maintained that the remaining federal claims were procedurally barred.  *Id.* at 12, 15-29, 30-32.

In a February 26, 2014 Order, the Court dismissed Applicant's claims on the grounds asserted by Respondents, except for the following: claims 1, 3, part of claim 6 (asserting that Applicant's plea agreement violated due process because the trial court failed to inform him that he was essentially agreeing to a life sentence of incarceration

2

with only the possibility of parole and to explain the meaning and nature of an

indeterminate sentence); part of claim 4 (asserting that Crim. P. Rule 32(d) counsel was

ineffective), and part of claim 12 (cumulative error concerning the exhausted allegations

of claims 1, 3, 4, and 6).  Docket No. 34.

The Court reviews Applicant's remaining claims below under the AEDPA

standard of review.

## II.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a

statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*,

562 U.S. 86, 98-99 (2011).  In particular, "determining whether a state court's decision

resulted from an unreasonable legal or factual conclusion does not require that there be

an opinion from the state court explaining the state court's reasoning."  *Id*. at 98.  Thus,

"[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. at 98. In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id*.

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

4

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1).  *See id*. at 1018.

If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id*. at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks omitted).  In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 88 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

6

*Richter*, 562 U.S. at 102.

The court reviews claims asserting factual errors pursuant to 28 U.S.C.

§ 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).

Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the

relevant state court decision was based on an unreasonable determination of the facts

in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), the court

must presume that the state court's factual determinations are correct and the petitioner

bears the burden of rebutting the presumption by clear and convincing evidence.  "The

standard is demanding but not insatiable . . . [because] '[d]eference does not by

definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-*

*El v. Cockrell*, 537 U.S. 322, 340 (2003)).

## B.  *Pro Se* Litigant

Applicant is proceeding *pro se*.  The court, therefore, "review[s] his pleadings

and other papers liberally and hold[s] them to a less stringent standard than those

drafted by attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007)

(citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However,

a *pro se* litigant's "conclusory allegations without supporting factual averments are

insufficient to state a claim on which relief can be based."  *Hall v. Bellmon*, 935 F.2d

1106, 1110 (10th Cir. 1991).  A court may not assume that an applicant can prove facts

that have not been alleged, or that a respondent has violated laws in ways that an

applicant has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

*Council of Carpenters*, 459 U.S. 519, 526 (1983).  *Pro se* status does not entitle

Applicant to an application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## III.  ANALYSIS

### A.  Clearly Established Federal Law

Plaintiff's remaining claims challenge the validity of his plea agreement and the effectiveness of his attorneys' representation.

Due process of law requires that a guilty plea must be knowing, voluntary and intelligent.  *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Brady v. United States*, 397 U.S. 742, 748 (1970).  To enter a plea that is knowing and voluntary, a defendant must have "a full understanding of what the plea connotes and of its consequence."  *Boykin*, 395 U.S. at 244.  A defendant must be "fully aware of the direct consequences" of the plea.  *Brady v. Maryland*, 397 U.S. 742, 755 (1970) (internal quotation marks and citation omitted).

When a defendant enters a guilty plea on the advice of counsel, the defendant may attack the voluntariness of the plea by showing ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985).

To prevail on a claim of ineffective assistance of counsel, an applicant must show both that (1) his counsel's performance was deficient (i.e., that identified acts and omissions were outside the wide range of professionally competent assistance), and (2) he was prejudiced by the deficient performance (i.e., that there is a reasonable probability that but for counsel's unprofessional errors the result would have been different).  *Strickland v. Washington*, 466 U.S. 668 (1984).

8

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). "With respect to prejudice, . . . '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable." *Strickland*, 466 U.S. at 693. A habeas petitioner who alleges that he received ineffective assistance of counsel in connection with his entry of a guilty plea must demonstrate that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-60.

"Surmounting *Strickland*'s high bar is never an easy task." *Richter*, 562 U.S. at 105 (quoting *Padilla*, 559 U.S. at 371). "Establishing that a state court's application of *Strickland* was unreasonable under §2254(d) is all the more difficult." *Id*. "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

## B.  Claims One and Six

In claim one, Applicant asserts that his "plea was involuntary and unknowing due to his attorney's false representations and assurances." Docket No. 1 at 10. According to Applicant, his "attorney misrepresented the consequences of the plea, he himself was ignorant of consequences, and [counsel] assured [Applicant] that upon completion of a few 'classes' he would be released in 6-8 years." *Id*. The remaining allegation in

claim six is that Applicant's plea agreement violated due process because the trial court

failed to inform him that he was essentially agreeing to a life sentence of incarceration

with only the possibility of parole; explain the meaning and nature of an indeterminate

sentence; and explain that a parole violation for a sex offender could result in

reincarceration for the remainder of his natural life.  *Id.* at 14; *see also* Docket No. 10-2

at 42-46.

### 1.  State District Court Proceedings

At the providency hearing, the state district court advised Applicant of the

sentencing consequences of the plea agreement:

> There's an agreement that Mr. Boetger will be sentenced to an
> indeterminate sentence at the Colorado Department of Corrections. The
> minimum sentence there would be in the range of from six to eight years,
> the maximum term could be the remainder of Mr. Boetger's natural life.  If
> released on parole, he'll be required to serve a minimum of 20 years of
> parole, and the parole period could extend to the remainder of his natural
> life.

Docket No. 35-2, *Providency Hrg. Tr.,* at 3; *see also* Docket 35-1, *Plea Agreement*, at

15.  The trial court also explained to Applicant the meaning of an indeterminate

sentence:

> Under normal circumstances, upon conviction, you could be sentenced to
> a term -- a minimum term of four years up to a maximum term of the
> remainder of your natural life.  That is the "indeterminate" term.

*Id.* at 12.  The court further informed Applicant that, if he was released on parole, the

period of parole could extend to the remainder of his natural life.  *Id.* at 13.  Applicant

told the state district court that he had reviewed and understood the terms of the plea

agreement and had discussed it with his attorney.  *Id.* at 4-5.  When the court asked

Applicant if he had any questions, Applicant responded in the negative.  *Id.* at 13.

Applicant then pleaded guilty to the charge of sexual assault on a child, a victim under

the age of 15, by one in a position of trust and provided the court with a factual basis for

the plea.  *Id.* at 14-15.  The state district court found that Applicant's plea was knowing,

intelligent, and voluntary.  *Id.* at 15.

Applicant subsequently filed a motion to withdraw his guilty plea pursuant to

Crim. P. 32(d), and the state district court held an evidentiary hearing.  Applicant

testified that his counsel assured him that he would be released after serving six to

eight years if he completed sex offender classes in prison.  State Court R., 6/16/08 Hrg.

Tr. at 10-12.  Three attorneys who represented Applicant during his first trial and the

plea proceeding testified at the hearing that they explained indeterminate sentencing to

the Applicant and that none of them assured Applicant of release after serving six to

eight years in prison.  *Id.* at 17-21; 33; 40-42; 50.

### 2.  *State Appellate Court Proceeding*

In *Boetger I*, the Colorado Court of Appeals resolved Applicant's challenge to the

validity of his plea agreement on the following grounds:

> At an evidentiary hearing on defendant's motion, the court heard
> testimony from defendant, his plea counsel, and two other attorneys from
> plea counsel's firm who had participated in the case (one of whom had
> represented defendant at a trial on the original charges that had ended in
> a mistrial due to a hung jury).
>
> Based on this testimony, as well as the court's review of the written
> plea agreement and the transcript of the providency hearing (which had
> been conducted before a different judge), the court determined that
> defendant had not (1) demonstrated that plea counsel provided ineffective

assistance; or (2) carried his burden of demonstrating "a fair and just reason to withdraw his guilty plea." Accordingly, the court denied the motion and imposed sentence.

On appeal, defendant's primary argument is that the court abused its discretion by not accepting his testimony indicating that he relied on plea counsel's erroneous assurance that he would be paroled in six to eight years. We disagree. The written plea agreement, the transcript of the providency hearing, and the testimony of defendant's three former attorneys all support the trial court's finding that defendant fully understood that an indeterminate sentence could result in life imprisonment. Further, it was the trial court's prerogative, as the finder of fact, to credit plea counsel's testimony in which he unambiguously denied having assured defendant "that he would be out in six to eight years." See *People v. Downey*, 994 P.2d 452, 455 (Colo. App. 1999) (when the trial court serves as fact finder, the weight and credibility to be given the testimony of witnesses are within its province), *aff'd*, 25 P.3d 1200 (Colo. 2001).

. . .

Finally, defendant argues that the court should have allowed him to withdraw his guilty plea because neither his attorneys nor the court explicitly advised him that he could be sentenced to life imprisonment if he were to be released on parole and then reincarcerated following a parole revocation. This claim is unconvincing because the transcript of the providency hearing reflects that the court advised defendant his "parole could also extend to the remainder of your natural life." We conclude this statement constituted a sufficient advisement concerning the consequences of parole revocation because "[t]here is no logical understanding of the term 'parole' which does not contemplate the possibility that a parole violator will be reincarcerated for the balance of the parole period." *People v. Jones*, 957 P.2d 1046, 1048 (Colo. App. 1997) (the possibility of reincarceration for a parole violation is a collateral consequence of a plea for which no affirmative advisement is required).

For the foregoing reasons, we cannot say the trial court abused its discretion by refusing to allow defendant to withdraw his guilty plea.

Docket No. 10-3 at 4-6, 8-9.

### 3.  Analysis

#### a.  Sentencing Ramifications of Guilty Plea

The transcript of the providency proceeding in the state district court supports the

state appellate court's finding that Applicant understood the sentencing provisions of

the plea agreement.  "Solemn declarations in open court carry a strong presumption of

verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  And "the representations of the

defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings

made by the judge accepting the plea, constitute a formidable barrier in any subsequent

collateral proceedings."  *Id.* at 73-74.

Although Applicant testified at the Crim. P. 32(d) evidentiary hearing that counsel

misrepresented the term of incarceration, the state district court was not persuaded by

this testimony, but instead credited the testimony of Applicant's former attorneys that

they never assured Applicant he would be released from prison in six to eight years and

that they explained the nature of indeterminate sentencing to him.  Under the

deferential AEDPA standard of review, a state court's credibility determinations are

presumed to be correct and must be rebutted by clear and convincing evidence.  *See*

*Clayton v. Jones*, 700 F.3d 435, 442 (10th Cir. 2012); *Morris v. Ulibarri*, No. 12-2160,

513 F. App'x 777, 778 (10th Cir. March 20, 2013) (unpublished); a*ccord Rice v. Collins*,

546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree

about the prosecutor's credibility, but on habeas review that does not suffice to

supersede the trial court's credibility determination.").  Applicant's self-serving

statements, which the state district court did not believe, do not undermine the state court's factual findings.

Moreover, Applicant fails to establish that he was prejudiced as a result of any erroneous advice by defense counsel as to his probable release date. "[D]efense counsel's failure to advise, or its furnishing of erroneous advice, regarding the consequences of a guilty plea generally does not cause the defendant prejudice if the defendant is correctly informed of the consequences by the trial court or other sources prior to entering the plea." *Schumacher v. Ortiz*, 405 F. App'x 290, 293 (10th Cir. Dec. 15, 2010) (unpublished). As discussed above, both the plea agreement and the state district court judge informed Applicant that he would be sentenced to a minimum range of 6-8 years in prison and a maximum term of life. Docket No. 35-1 at 15; State Court R. 12/3/07 Hrg. Tr., at 3. Because Applicant was apprised of the sentencing consequences of his guilty plea, his assertion that he would not have pleaded guilty but instead proceeded to trial if he knew he was facing a possible life sentence does not suffice to demonstrate prejudice. *See*, *e.g.*, *United States v. Gordon*, 4 F.3d 1567, 1571 (10th Cir. 1993) ("Given the fact that Defendant pleaded guilty even after being so informed by the court, his mere allegation that, but for original counsel's failure to inform him about the use of relevant conduct in sentencing, he would have insisted on going to trial, is insufficient to establish prejudice."); *United States v. Hamilton*, 510 F.3d 1209, 1216 (10th Cir. 2007) ("In light of the court's careful explanation of the plea's consequences and [the defendant's] testimony that he understood those consequences, [the defendant's] allegation that he would have gone to trial but for his

attorney's failure to advise him of the career-offender provision is insufficient to establish prejudice.").

The Court finds that the Colorado Court of Appeals' determination of Applicant's claims challenging the validity of his guilty plea was not contrary to, or an unreasonable application of, *Boykin*, *Brady*, or *Hill*.  Accordingly, Applicant is not entitled to federal habeas relief on his allegations that his plea was constitutionally infirm because he did not know and understand the sentencing consequences.

### b.  Insufficient Advisement Concerning Parole

Applicant also contends that the trial court failed to advise him of the unlikelihood that he would ever be paroled and that, if parole was revoked, he could be reincarcerated for the remainder of his life.  The Court finds that the state appellate court's determination of these issues was not contrary to, or an unreasonable application of, federal law.  Under *Brady*, the district court is required to advise the defendant of the direct consequences of a plea.  However, the Supreme Court has never held that the trial court, or defense counsel, has an obligation to advise the defendant of the parole consequences of his guilty plea.  *See Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008) (recognizing that "no Supreme Court precedent establishes that parole ineligibility constitutes a direct, rather than a collateral, consequence of a guilty plea."); *see also Hill*, 474 U.S. at 56 ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary . . .").

The Tenth Circuit has held that "[c]onsequences of a guilty plea unrelated to the length and nature of the federal sentence are not direct consequences." *United States v. Hurlich*, 293 F.3d 1223, 1231 (10th Cir. 2002); *see also Sanchez v. United States*, 572 F.2d 210, 211 (9th Cir. 1977) (holding that revocation of parole is a collateral consequence of a guilty plea), *cited with approval in Harris v. Allen*, 929 F.2d 560, 562 (10th Cir. 1991).

In *Padilla v. Kentucky*, the Supreme Court recognized that there is a disagreement among the courts of appeal about how to distinguish between direct and collateral consequences of a guilty plea. *Padilla*, 559 U.S. 356, 364 n.8 (2010) (citing Roberts, *Ignorance is Effectively Bliss: Collateral Consequences, Silence, and Misinformation in the Guilty-Plea Process*, 95 Iowa L. Rev. 119, 124, n.15 (2009)). However, *Padilla* did not resolve that conflict. *See id.*; *see also Chairdez v. United States*, 133 S.Ct. 1103, 1110 (2013) (recognizing that "[b]efore *Padilla*, we had declined to decide whether the Sixth Amendment had any relevance to a lawyer's advice about matters not part of a criminal proceeding."). Instead, the Court in *Padilla* issued a narrow holding that defense counsel has an obligation to advise his client that a guilty plea would make him subject to automatic deportation pursuant to federal statutes and that the failure to provide such advice constituted ineffective assistance of counsel. 559 U.S. at 374.

The Court finds that, because there is no clearly established Supreme Court law requiring a trial court to advise a defendant of the discretionary parole consequences,

or parole revocation consequences, of a guilty plea, Applicant's claim fails under 28 U.S.C. § 2254(d)(1).  *See Hatch*, 527 F.3d at 1018.

The Court further finds that the Colorado Court of Appeals' determination was not unreasonable in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(2).  Both the plea agreement and the state district court informed Applicant that, if he were paroled, the duration of parole could be for the remainder of his natural life.  A logical extension of this advisement is that, if parole was revoked, Applicant might be incarcerated for the remainder of his natural life.

Accordingly, Applicant is not entitled to federal habeas relief for claims one and six.

### C.  Claims Three and Four

In claims three and four, Applicant asserts that his plea counsel and Crim. P. 32(d) counsel rendered constitutionally ineffective assistance ("IAC claims").  Docket No. 1, at 10-12.

#### 1.  Claim Three

Mr. Boetger asserts that he was forced to plead guilty because his trial counsel was not prepared for trial.

At the providency hearing, the state district court gave Applicant two opportunities to express dissatisfaction with his counsel's trial preparation efforts, but he did not do so.  First, Applicant  responded in the affirmative when the state district court asked if had been satisfied with the legal advice and representation he had

received.  Docket No. 35-2 at 6.  The following colloquy then occurred between the

state court and Applicant:

> THE COURT: One of the things we often have to deal with, Mr. Boetger
> — and I want to be honest with you about that — is that people have
> "buyer's remorse" once they go through a plea agreement like this, and
> you need to understand that if we go forward this afternoon and you
> acknowledge that you've been satisfied with the representation that you
> have received, in my view, you would not be able to come back at a later
> time and allege that you did not receive effective representation from your
> attorney.  I do not want to be relitigating this matter in months or years
> down the road.
>
> Do you understand that?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: So I ask you again, have you been satisfied with the advice
> and representation that you've received from the Romero law firm?
>
> THE DEFENDANT: Yeah.

*Id.* at 6-7.

In *Boetger I*, the Colorado Court of Appeals rejected the ineffective assistance of

counsel claim on the following grounds:

> The record also supports the trial court's determination that
> defendant did not prove that his attorneys had performed ineffectively.
> Although the court expressed concern about whether plea counsel had
> thoroughly prepared for trial, defendant did not argue that he agreed to
> the plea bargain and entered his plea because he thought his counsel
> was not prepared for trial.  Instead, he argued that his counsel gave him
> erroneous advice about the likely term of incarceration.  Moreover, the
> court's ultimate conclusion that defendant had not demonstrated
> ineffective assistance of counsel is supported by the transcript of the
> providency hearing which reflects that defendant twice expressed
> satisfaction with the performance of his attorneys.  These unqualified
> assurances were a proper basis for the court to reject defendant's
> subsequent claim that he was coerced to plead guilty because his counsel
> was unprepared for trial.  *See People v. Garcia*, 815 P.2d 937, 941-42
> (Colo. 1991) (a defendant claiming ineffective assistance of counsel must
> show that, but for counsel's alleged failings, he would not have pleaded

guilty); *People v. Lopez*, 12 P.3d 869, 871 (Colo. App. 2000) (because defendant's allegations of ineffective assistance of counsel were refuted by the record, the court did not abuse its discretion by denying his Crim. P. 32(d) motion without conducting a hearing or appointing substitute counsel).

Docket No. 10-3 at 6-7.

Applicant's statements at the providency hearing refute his later assertion that he only pleaded guilty because his counsel was not prepared for trial.  Again, this Court presumes the verity of Applicant's "[s]olemn declarations in open court." *Blackledge,* 431 U.S. at 74.  The Court finds and concludes that the state appellate court's resolution of the allegations in claim three comported with *Strickland.*  Applicant therefore is not entitled to federal habeas relief on this claim.

### 2.  Claim Four

The allegations remaining in claim four are that Applicant's Crim. P. 32(d) counsel rendered ineffective assistance by failing to adequately argue the following as reasons to withdraw Applicant's guilty plea: that Applicant was innocent of the charge and that plea counsel had failed to prepare for trial.  Docket No. 1 at 12.

In *Boetger II*, the Colorado Court of Appeals applied a state law standard similar to the *Strickland* standard, *see* Docket No. 10-8 at 20, and resolved the claim as follows:

> Defendant argues that Crim. P. 32(d) counsel was ineffective when she (1) failed to argue that he pleaded guilty because defense counsel was not prepared for trial; and (2) failed to advise him to voice his innocence as a reason for withdrawing his plea.  We are not persuaded.
>
> . . .
>
> Here, defendant failed to sufficiently allege that there was prejudice.  Defendant states that (1) the issues "would have certainly

exceeded the 'fair and just reason' threshold for withdrawing his plea"; (2) he is "sure the court would have recognized the weight of these errors had they been presented by his appointed counsel, as part of his 'fair and just reason' to withdraw his plea"; and (3) they would have been meritorious.

But he does not explain why there was a reasonable probability that the result of his Crim. P. 32(d) motion would have been different if he had informed the court that he was innocent and had pleaded guilty because defense counsel was unprepared for trial. Although the division in *Boetger I* noted that defendant did not argue that this was the reason he pleaded guilty, it also concluded that, if he had, his assurances to the court during the providency hearing that he was satisfied with the performance of his attorneys would have provided a reason to reject his claim. Defendant also does not cite to any authority to support this contention.

Under these circumstances, we conclude that defendant's claim fails as a matter of law. [State case law citation omitted]. Accordingly, we need not determine whether his allegations regarding counsel's performance were sufficient to warrant a hearing. [State case law citation omitted].

*Id.* at 10-12.

The Court finds that the state appellate court's resolution of Applicant's allegations that Rule 32(d) counsel was ineffective in failing to argue the ineffectiveness of plea counsel is consistent with *Strickland* for the reasons discussed in the analysis of with regard to claim three above.

With regard to Rule 32(d) counsel's failure to press a claim of actual innocence, Applicant has failed to show how he was prejudiced. In conjunction with his IAC claim, Applicant sought to demonstrate his innocence to the Colorado Court of Appeals by arguing that "70% of my defense including all the evidence in my favor was never revealed." Docket No. 10-6, at 65. However, he failed to explain the specific nature of any exculpatory evidence. Conclusory assertions are insufficient to support an IAC claim. *See Cummings v. Sirmons*, 506 F.3d 1211, 1233-1234 (10th Cir. 2007).

20

In addition, Applicant made the following argument at his sentencing hearing:

> I am not a Satanist and I've never made [M.M.] pray to the devil for his mom to die.  I'm not or never have been into bestiality and never exposed [M.M.] to such things.  I've never pushed drugs on [M.M.], never gave him a pipe trying to get him hooked on drugs.  I've never tried to poison my wife with flea powder and I've never stalked the neighbors with a shotgun.  I've never spanked, let alone hit [M.M.], and I never, ever had any sort of inappropriate sexual contact with him.

Docket No. 35-3, *Sentencing Hrg. Tr.*, at 11.

However, Applicant's assertions of factual innocence did not specifically rebut the charges of digital penetration, fondling, and masturbation.  Indeed, at the providency hearing, Applicant admitted a factual basis for the fondling charge to which he pled guilty.  Docket No. 35-2 at 14-15.

In sum, the Court finds and concludes that the state appellate court's determination that Applicant was not prejudiced by Crim. P. 32(d) counsel's failure to raise Applicant's factual innocence as a basis to withdraw his plea was consistent with *Strickland*.  Applicant is not entitled to federal habeas relief for claim four.

### D.  Claim Twelve

In claim twelve, Applicant asserts that the cumulative effect of the errors in his plea proceeding warrants habeas corpus relief.  Docket No. 1 at 16.

Cumulative error is present when the "cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error."  *Duckett v. Mullin*, 306 F.3d 982, 992 (10th Cir. 2002) (quoting *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc)). "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether

their cumulative effect on the outcome of trial is such that collectively they can no longer be determined to be harmless." *Id.* (quoting *Rivera*, 900 F.2d at 1470).  On federal habeas review, a cumulative error analysis applies only to cumulative constitutional errors.  *Young v. Sirmons*, 551 F.3d 942, 972 (10th Cir. 2008).

There is a split in the Courts of Appeal as to whether the need to conduct a cumulative-error analysis is clearly established federal law under § 2254(d)(1).  See *Hooks v. Workman*, 689 F.3d 1148, 1194 n.24 (10th Cir. 2012).  The Tenth Circuit has indicated, however, that in the context of ineffective-assistance claims, "for AEDPA purposes, the cumulative-error inquiry is clearly established federal law. *Id.*; *see also Littlejohn v. Trammell*, 704 F.3d 817, 869 (10th Cir. 2013) (recognizing that "[a]though we have never expressly held . . . that cumulative-error analysis is clearly established federal law, we have long conducted cumulative-error analyses in our review of federal habeas claims.") (collecting cases).  This Court need not resolve the issue because under the deferential AEDPA standard of review, Applicant is not entitled to relief.

The Colorado Court of Appeals did not specifically address Applicant's allegations of cumulative error raised in his Opening Brief in the state post-conviction proceeding.  *See* Docket No. 10-7 at 53-58, and *see generally* Docket No. 10-8. However, because the state appellate court affirmed the trial court's denial of Applicant's state post-conviction motion in its entirety, this federal habeas court affords that decision deference.  *See Harrington*, 131 S. Ct. at 784-85.  As discussed, *supra*, this Court has applied the AEDPA standard of review to each of Applicant's remaining claims and has concluded that the Colorado Court of Appeals' resolution of the claims comported with applicable federal law.  As such, the Court further finds that the state

appellate court's rejection of Applicant's cumulative error claim was also consistent with federal law. *See Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003) (cumulative error claim fails where there were no constitutional errors in the petitioner's state criminal proceeding).

Applicant therefore is not entitled to federal habeas relief for claim twelve.

## IV.  ORDERS

For the reasons discussed above, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 1], filed by Michael A. Boetger on March 4, 2014, is denied and this action is dismissed with prejudice.  It is further

**ORDERED** that no certificate of appealability shall issue because Applicant has not made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000).  It is further

**ORDERED** that leave to proceed *in forma pauperis* on appeal is denied.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED June 16, 2015.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge